The Supreme Council of the Order of Chosen Friends v. Garrigus.

| 104 | 133 |
| 125 | 55 |
| 104 | 133 |
| 131 | 423 |
| 104 | 133 |
| e165 | 320 |

No. 12,177.

## THE SUPREME COUNCIL OF THE ORDER OF CHOSEN FRIENDS v. GARRIGUS.

INSURANCE.—*Mutual Benefit Society.*—*Member May Resort to Court of Law to Enforce Rights.*—A member of the Order of Chosen Friends is not bound, as the holder of a relief fund certificate, to exhaust his remedies in the courts of the order before resorting to a court of law, nor is he concluded by an adverse decision on his claim by the Supreme Council, from resorting to a court of law; and the order can not, by provisions in its constitution, by-laws or relief fund laws, deprive him of this right. *Bauer* v. *Samson Lodge, K. of P.*, 102 Ind. 262, followed.

SAME.—*"Accident."*—*Injury Received in Affray.*—Under a provision in the laws of the Order of Chosen Friends providing for payment to certificate holders who have become disabled by accident, the word "accident" will be given its ordinary and usual signification, as being an event that takes place without one's foresight or expectation, and it may include an injury received by one in a common law affray, where no fault on his part is shown.

COMMON LAW.—*Presumption that it is in Force in Other States.*—In the absence of any showing to the contrary, the courts of this State will presume that the common law is in force in another State.

AFFRAY.—*Common Law Definition.*—The common law definition of an affray does not involve an agreement to fight, as does the statute of this State, and one might become engaged in such affray without culpable fault.

From the Marion Superior Court.

*F. M. Finch* and *J. A. Finch*, for appellant.

*S. M. Shepard, C. Martindale* and *L. C. Garrigus*, for appellee.

ZOLLARS, J.—Appellee brought this action to recover from appellant $1,500, which he claims is due him under the charter, constitution and by-laws of the order. The order was incorporated under section 3502, R. S. 1881. Some of its principal objects, as declared in the articles of incorporation, are to unite its members in bonds of fraternity, aid and protection, to improve the condition of the members morally, socially and materially, and to establish a relief fund, from which members, who have complied with all its rules and reg-

ulations, or persons by such members lawfully designated, or the legal heirs of such members, may receive a benefit in a sum not exceeding three thousand dollars, which shall be paid either when a member reaches the age of seventy-five years, or when, by reason of disease or accident, such member becomes permanently disabled from following his usual, or some other occupation, or upon satisfactory evidence of the death of such member, and when all the conditions regulating such payment have been complied with.

Among the general officers designated in the articles are a supreme councillor, a supreme recorder, a supreme treasurer, and a supreme medical examiner.

Among the powers named in the articles, it is declared that the association shall have power to make and change its own constitution and laws, and to grant, revoke and change constitutions for all grand and subordinate councils of the order, and to finally decide all matters and appeals pertaining to the order, which shall be properly presented to it.

The constitution adopted by the order provides for the same general officers, declares the same objects, and asserts the same powers. It is there declared that the order shall have power to grant charters for grand councils, in any State, Territory or country, not under the jurisdiction of a grand council; that it shall have exclusive power to grant charters to subordinate councils, which shall be, until the formation of a grand council, under the immediate and direct jurisdiction of the order—the Supreme Council of the Order of Chosen Friends.

There is another provision that the decisions of the supreme council on all matters pertaining to the order, and on all appeals properly presented, shall be final. The duties of the supreme medical examiner are defined as follows: " The supreme medical examiner shall carefully examine all reports and papers relating to the permanent disability of a member of the order, and render a decision thereon. He shall examine and report on all medical examinations referred to him,

and perform such other duties as the laws and usages of the order require.    He shall submit at each annual session of the supreme council a written report of all his official acts during the recess."    It is further provided that grand councils shall have no control of the relief fund.

Among the committees provided for by the by-laws of the order is a committee on grievances.   The duties and powers of this committee, as fixed by the by-laws, are as follows: "The committee on grievances and appeals shall examine all cases of grievances coming before the supreme council by appeal or otherwise, and report their opinion, together with a distinct statement of all questions at 'issue, to the supreme council."

The relief fund laws adopted by the order provide for the creation of a relief fund.   One section of these laws provides that upon permanant disability one-half of the amount named in the relief fund certificate held by the member shall be paid to him at once.

Another section is as follows: " Should a member become permanently disabled from following his or her usual or other occupation, by reason of disease or accident, on receipt of the proper notice the supreme council shall order a board of three physicians (who shall be members of the order if possible) to be selected by the subordinate council, whose duty it shall be to make a careful examination of the member's condition, report as to the permanency of the disability, and upon their recommendation, and the approval of the supreme medical examiner, the member shall be entitled to one-half the benefit: *Provided*, That where the disability is caused by accident, and is patent to the eyes of all, the examination by the board of physicians may be dispensed with," etc.

Another section provides that upon the receipt of the proper notice of the permanent disability of a member, the supreme recorder shall draw an order on the supreme treasurer in favor of such member for the amount, and forward the same

to the treasurer of the subordinate council of which the disabled person is a member.

Another section provides that the treasurer of the subordinate council shall deliver the order to the member, and receive from him his relief fund certificate.

Basing his claim upon these provisions of the articles of incorporation, the constitution, by-laws and relief fund laws, appellee charges in his complaint that the supreme council instituted and established a subordinate council in the State of Kentucky, known as Logan Council No. 12, of which he was and is a member, holding a relief fund certificate for $3,000; that in May, 1883, without any agency, fault or negligence on his part, he received a pistol-shot wound in the elbow, which permanently disabled him from following his usual or other occupation, and that his disability was and is patent to the eyes of all. He, however, through the Logan council, notified the supreme council, and it in turn notified the Logan council to appoint a board of physicians to examine the injury. The board was appointed and reported in favor of allowing and paying to appellee $1,500, the one-half of the amount named in his relief fund certificate. Appellant has refused and still refuses to pay the amount.

Appellant answered this complaint in four paragraphs, the first of which is a general denial. The second is based upon the theory that as there was no grand council in the State of Kentucky, Logan council No. 12 was under the immediate jurisdiction of the supreme council; that the provisions of the articles of incorporation, the constitution, by-laws and relief fund laws of the supreme council, above referred to and set out, were intended to and do afford the members of the order an adequate tribunal within the order for the settlement of such controversies. It alleges that the report of the board of physicians was referred to the supreme medical examiner, who decided against allowing appellee's claim; that he might have appealed from this adverse decision to the supreme council, but did not do so, and that, therefore, he

can not prosecute this action.   In short, the theory of the plea is, that he did not first exhaust the remedies provided within the order, and can not, therefore, have recourse to a court of law.

The third paragraph of the answer charges that appellee should not recover in this action for the reason, among others, that he "became engaged in an affray with a party or parties whose names are unknown to the defendant, during which he, the plaintiff, received a pistol shot wound in the right arm, said wound being inflicted wilfully and intentionally by said third party or parties," and that the same was, therefore, not accidental.   It is further charged that appellee was not thereby permanently disabled from following his usual occupation.   There are many other averments in this paragraph, but the above are the real questions presented thereby.

The fourth paragraph is based upon the theory that under the provisions of the articles of incorporation, etc., above referred to and set out, the supreme council is made the arbiter and court of appeals for the final settlement of all controversies between the order and its members.   It is alleged that appellee called for the appointment of a board of physicians; that they were appointed and reported in favor of his claim; that this report was referred to the supreme medical examiner; that the supreme medical examiner decided against the claim, and reported his decision to the supreme council, and that upon the receipt of such report the supreme council refused to allow appellee's claim.

The second and fourth answers present these questions:

*First.* Do the constitution, by-laws and relief fund laws provide a tribunal within the order to which a member may appeal in a case like this?

*Second.* If there is such a tribunal and a mode of appeal thereto provided, must a member, in a case like this, take such appeal, and exhaust his remedies in such courts of the order before resorting to a court of law to enforce his rights?

*Third.* If the supreme council, as such appellate court,

passes upon such a claim adversely, is the decision so final and conclusive that the member may not resort to a court of law?

All of these questions were exhaustively examined and ruled in the negative in the case of *Bauer* v. *Samson Lodge, K. of P.*, 102 Ind. 262.

The by-laws and regulations involved in that case more clearly define the tribunals within the order, and the mode of appeal thereto, than do the by-laws, etc., involved in the case before us. Here, when a matter has been referred to the board of physicians, and they have passed upon it, their report goes to the supreme medical examiner for his examination and decision. He is to report his official acts to the supreme council. So far as we can discover there is no mode provided in the by-laws or otherwise, by which a member, in a case like this, can appeal from the decision of the supreme medical examiner, or invoke the decision of the supreme council in approval or disapproval of the decision of that officer. However that may be, it is very clear that the provisions are not such as to make it obligatory upon the member, in a case like this, to first invoke a decision of the supreme council before resorting to a court of law to enforce his rights. It is also clear, under the ruling of the above case of *Bauer* v. *Samson Lodge, K. of P.*, *supra*, that the order could not, by provisions in its constitution, by-laws or relief fund laws, deprive a member of the right to resort to a court of law to enforce his rights. The reasons upon which the rulings in that case are made to rest are so fully stated, with a citation of the authorities, that we need not re-state them here. We, therefore, content ourselves with a citation of the case.

As we have seen, the relief fund laws provide for the payment to the member of one-half of the amount named in the relief fund certificate held by him, when he has become disabled by accident. It is charged in the complaint, as we have also seen, that without any agency, fault or negligence

on the part of appellee, he received a pistol-shot wound in the elbow which. permanently disabled him from following his usual or other occupation.

The third answer is an attempt to meet and overthrow the case as made by the complaint, by alleging that appellee became engaged in an affray, and that the pistol-shot wound was intentionally inflicted by the adversary or adversaries. The argument is, that the injury, having been intentionally inflicted in an affray, was not an accident, and that hence appellee can not recover.

Our statute provides that if two or more persons, by agreement, fight in any public place, the persons so offending are guilty of an affray. R. S. 1881, section 1980. To be engaged in an affray under this statute, both parties will be guilty of a violation of the law, because the fighting must be by agreement. We have no knowledge, however, that such a statute is in force in Kentucky, where appellee received the wound, and where it is alleged in the answer he received it. We can not, therefore, give to the word "affray," as used in the general charge in the answer, a meaning broader than the usual and ordinary signification of the word. Ordinarily, an affray means simply the fighting of two or more persons in some public place, to the terror of others. Mr. Roscoe, in his work on Criminal Evidence, at page 270, says: "It differs from a riot, in not being premeditated. Thus if a number of persons meet together at a fair or market, or upon any other lawful or innocent occasion, and happen on a sudden quarrel to engage in fighting, they are not guilty of a riot, but of an affray only (of which none are guilty but those who actually engage in it); because the design of their meeting was innocent and lawful, and the breach of the peace happened without any previous intention." It will thus be seen that the common law definition of an affray does not involve an agreement to fight, as does our statute. We must presume that the common law is in force in Kentucky. It might be, therefore, that appellee was engaged in an affray in

Kentucky without having agreed to fight, and without any culpable fault on his part.

The charge that appellee was engaged in an affray is moreover the statement of a conclusion, and is not sufficient to meet the averments in the complaint, that appellee received the wound without any agency, fault or negligence on his part. If the facts were stated instead of the conclusion, as the rules of pleading require, it might appear that the only part appellee took was in defence of his person against the assaults of his adversary or adversaries, and that thus, whatever injuries he received were received without any fault or wrong on his part. Nor will it do to say, that because the injury was intentionally inflicted by the assailant and wrongdoer, it was not an accident to appellee, within the meaning of the word "accident," as used in the relief fund laws, etc., of the order. To thus limit the word "accident," would be to thwart the manifest object of the order and deprive the members of the benefits they have a right to expect upon the payment of their dues and assessments. The word "accident," as used in those laws and in the relief fund certificates held by the members, should be given its ordinary and usual signification, as being an event that takes place without one's foresight or expectation. It will not do to say, that because a desperado waylays, assails and wounds a member intentionally, that wounding is not an accident to the member, within the laws, etc., of the order.

It follows from what we have said, that the court below, at general term, did not err in reversing the decision at special term, and in remanding the cause to the special term, with directions to sustain appellee's demurrer to the second, third and fourth paragraphs of appellant's answer.

The judgment at general term is affirmed, at appellant's costs.

Filed Dec. 8, 1885.