JOSEPH MCGLINCHEY and others, by next friend,

*vs.*

FIDELITY AND CASUALTY COMPANY.

Washington.    Opinion March 8, 1888.

*Accident insurance.    Death from fright.*

Whilst a person, who was insured under an accident policy, was driving upon a public street, his horse became frightened at an unsightly object on the street and ran away, without upsetting the carriage or coming in contact with anything before he was brought under control by the driver. But such person was, apparently, greatly endangered at the time, and suffered so severely, either from fright produced thereby, or from some strain caused by his physical exertion in restraining the horse, that he died within about an hour afterwards. *Held*: That the death may be considered as having ensued from bodily injuries effected through external, violent and accidenta means.

The clause in the policy which provides that the insurance shall not extend to any bodily injury of which there shall be no external and visible signs upon] the body of the insured, does not apply to fatal injuries, but only to those not resulting in death.

ON report.

The opinion states the case and material facts.

*A. McNichol*, for the plaintiffs, submitted without argument.

*N. and H. B. Cleaves and E. B. Harvey*, for defendant.

We cannot better state the law of this case than by quoting the language of United States Circuit Court Judge CLARK, of New Hampshire, in his charge to the jury in the case of *Ephraim Whitehouse* v. *Travellers' Ins. Co.* Insurance Law Journal, Vol. 7, p. 23, which is as follows : "Now, in order to enable the plaintiff to recover under this policy, gentlemen, it is incumbent on the plaintiff to prove to you that this injury or accident was the cause of death, and the sole cause. It is also incumbent on him to prove that the injury or accident left some external, visible mark of its happening, of injury to the person, and if he fails to prove either of these points, he must fail in his case."

The preliminary proofs are not evidence to the jury of a loss, and if necessary to lay them before the jury it must be with caution against considering them as evidence of the fact or extent of the loss. *Citizens' Fire Ins. Co.* v. *Doll*, 35 Md. 89. Preliminary proof is not evidence to the jury of the facts therein ; it is only evidence of compliance with the terms of the policy. *Southern Ins. Co.* v. *Lewis*, 42 Ga. 587.

The affidavits and accounts of loss constituting the preliminary proofs are evidence that the plaintiff has complied with the requirements of the policy in this respect, and are not evidence in his favor, beyond the account of loss. *Newark* v. *London and Liverpool Fire Ins. Co.* 30 Mo. 160.

Proofs of loss are evidence only of compliance with conditions of the policy. 10 Insurance Law Journal, 657 ; *Williams* v. *Hartford Ins. Co.* 54 Cal. 442.

PETERS, C. J. The plaintiffs, who are minor children, sue for one thousand dollars, an amount insured in an accident policy on the life of their father by the defendant company. The circumstances of the father's death were these : On a morning, while a resident of Calais, he was driving in a covered carriage, containing himself and his two small boys, on the principal public way in St. Stephen, N. B., when his horse, frightened at a load of hides passing on the same way, suddenly sprang into a run, first jumping to the side of the way and nearly colliding with other teams, and ran a considerable distance before he was brought under control. The result was that there was no collision, nor was the carriage upset or any one thrown therefrom. Immediately afterwards the insured experienced great sickness and pain, and, going directly to his house, died in about an hour from the moment of the accident. He was in good health on that morning, before the accident, and there is no suggestion that he was not a person of generally sound and strong constitution. His business was that of a commercial traveller. The case is reported for our determination upon the law and facts.

We think, on these facts, that the common judgment of men

would instinctively declare, irrespective of the refinements which are often indulged in over primary and secondary causes, that here was a plain accident causing death, and that the company should pay the sum promised in the policy. In any reasonable view that can be taken of the series of happenings, our minds go to the same conclusion. We believe that the common sense view is also the legal view.

The company insures against death by accident. And as, in some cases, it is difficult to determine whether the death is caused by disease or by accident, in order to prevent fraud or mistake, the company provides its own tests by which the fact shall be ascertained. The leading provision of the policy is that those interested in the insurance, in order to establish the liability of the company, shall prove that death was caused " by bodily injuries effected through external, violent and accidental means," within the meaning of the contract. The company having chosen its definition of liability, and having the opportunity of annexing conditions which, usually, are not closely observed by persons accepting insurances, the meaning of the terms employed need not be enlarged or restricted for the benefit of the company, but should be liberally interpreted in favor of the insured.

Was the death in this instance caused by bodily injuries effected through external, violent and accidental means? Certainly there was an accident. The definition of accident, generally assented to, is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens. This definition exactly fits the facts here. Argument cannot be necessary to satisfy any one that the injury happened by violent means. A well man suddenly meets a perilous emergency which taxes all his physical and mental strength, and his death is caused thereby in an hour.

The greater question is whether the death was caused by external means. We have no doubt it was. And really all the questions of the case may be resolved into the single inquiry as to what was the real cause producing death. And here a question of fact must to some extent be determined. The testimony is

meager. Possibly the counsel for the plaintiffs relies on the preliminary proofs of loss as evidence in chief, which are fuller than the general testimony, but that is not allowable. Leaving the proofs of loss to serve only the proper purpose for which they could be introduced, all the evidence we have, more than the facts already stated, is that the insured became deathly sick, and after death a discoloration appeared on the surface of the body in the region of the heart. There is no pretence that the body bore any marks of contact with anything inflicting injury, or that it came in contact with any physical object during the time of the accident. Our belief is, on the facts legitimately before us, that death was produced by a ruptured blood vessel about the heart, and that such rupture was caused by the extraordinary physical and mental exertion which the deceased put forth to save his children and himself from injury. The physical strain and mental shock was more than he could bear. In this calculation of the facts, we come easily to the conclusion that, as between these parties, physical and external causes effected the death. The misconduct of the horse, and inseparably connected therewith the conduct of the man on the occasion, in his effort to avoid the threatened catastrophe, brought death.

The defendants, however, do not agree to this version of the facts. They contend that death was produced purely by fright, and not by the aid of any physical means whatever, and that the means through which death was produced must be considered as internal only. But if it is to be admitted that death was caused through fright, even then we are just as strongly convinced that it was also caused by external means. Whether one thing or another shall be considered the proximate cause, depends upon the relation of the parties to the suit with each other, as well as upon other circumstances. If the death be laid to fright, it must be because fright produced bodily injury, and the means which produced fright were external.

It is impossible to impute the death to fright without an explanation of the circumstances or situation which produced the fright. Suppose any person inquires of another what caused the death of a friend, and the answer be that he died from fright.

Would the question be more than half answered? Would not the inquirer immediately and instinctively ask the cause of the 'fright? In most conditions, and in almost every sense, fear is an effect of something merely. There must be some active cause behind it.

In the present case it was no more than an agency through which the accident acted. It was a dependent and not independent factor in the series of operating forces. It was no more the real cause of the death than a hammer in the hands of a workman, who strikes a blow with it, is the cause of such blow. The efficient, true cause, dominating all other causes in the combination, was the misbehavior of the running horse. Subsequent occurrences were merely the instrumentalities through which the real cause spent its force. The act of the horse was the beginning, death was the end.

The authorities are helpful to this view, though perhaps not exactly apropos or decisive. A person pushed into a river may be able to swim, and, if in full possession of his faculties, to save himself; but, if in the confusion and terror of the moment, he loses his self command and is drowned, the person thrusting him in the water is liable for the consequences. Whar. Neg. § 94. A man with an axe chased a boy, who, in his fright, ran into a store against a barrel of wine, breaking the barrel. The man was held responsible for the loss of the wine. *Vandenburgh* v. *Truax*, 4 Denio, 467. A person is liable *civiliter* for brandishing a gun for the purpose of scaring another. *Beach* v. *Hancock*, 27 N. H. 223. And is liable *criminaliter* for the same thing. *Com.* v. *White*, 110 Mass. 407. Where, by a defendant's negligence, his horse ran into another's sleigh and frightened his horses, causing them to run into the plaintiff's sleigh, it was held that the defendant was liable. *McDonald* v. *Snelling*, 14 Allen, 290. A woman fearing she would be run over by an express wagon carelessly driven, jumped against the wall of a building and injured her face. The act of the express company, by its agent, it was held, caused the injury. *Coulter* v. *American Express Co.* 56 N. Y. 585; see *Page* v. *Bucksport*, 64 Maine; 51, and cases there cited. It will be observed that

in these cases, and there are many others that fall within the same classification, the results are predicated upon the idea that where an accident arises from the fright of a person, the injury flowing from it is imputable to causes producing the fright.

Then there are cases more directly touching the question as to whether the injuries in the case at bar were produced by external means or not. It has been held that an insane man who takes his own life dies from an injury produced by external, accidental and violent means. *Accident Ins. Co.* v. *Crandal*, 120 U. S. 527. Same result follows when death ensues from accidental drowning. *Trew* v. *Assurance Co.* 6 H. & N. 845 ; *Winspear* v. *Accident Ins. Co.* 6 Q. B. Div. 42. Accidentally inhaling coal gas, causing death, entitles a recovery upon a policy like the present. *Paul* v. *Travellers' Ins. Co.* 45 Hun. 318. A death from blood poisoning, produced by virus communicated to the hand by a fly, comes within the terms of such a policy. *Bacon* v. *U. S. Mut. Accident Ass'n*, 44 Hun. 599. The latter case has been criticised upon the point whether the means in that instance were violent or not. In *Insurance Co.* v. *Burroughs*, 69 Penn. St. 43, the court says, " if the injury be accidental and the result is death, what matters it whether the injury is caused by a blow from a pitchfork or from a strain in handling it." In these cases it was held that the true cause of the death came from the outside, were external means. Upon principle, we think the same decision must be reached here.

Another point of defense is taken. By a subsidiary, conditional clause in the policy it is provided that the insurance " does not extend to any *bodily injury* of which there shall be no external and visible sign upon the body of the insured." This does not apply to fatal injuries, but only to those not resulting in death. It would be utterly unjust if this condition applied in cases of death. It would preclude recovery in all instances where death occurs by drowning, freezing, poisoning, suffocation, concussion, means of death leaving no outward mark, and also where the insured has been killed and his body is missing. The context shows that the clause is only applicable to injuries not

resulting in death. The policy declares that the insurance shall not extend to *bodily injuries* unless the external sign of injury is visible, "nor to *any death* caused" in certain ways named. There are reasons for the condition applying to a surviving claimant. He has unusual chance for feigning an internal injury, if disposed to defraud the insurers. But no such protection is required where the accident causes death. The dead body is external and visible sign enough that an injury was received. *Mallory* v. *Travellers' Ins. Co.* 47 N. Y. 52; *Paul* v. *Travellers' Ins. Co.* 45 Hun. 318.

*Defendants defaulted.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.