LIZZIE A. CARNES v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

**Insurance:** CONTRACTS: *Amendment of Constitution.* An amendment of articles of incorporation and by-laws of an insurance association, limiting the indemnity to death effected through or by external, violent, or accidental means, does not affect existing certificates issued while the constitution provided for indemnity whenever the death of a member occurred from an accidental cause with certain exceptions, where the constitution does not authorize an amendment binding a member to any change in the contract without his assent.

**DEATH FROM ACCIDENT:** *Poison.* When the death of an insured is caused by his taking more morphine than he intended, his beneficiary can recover on a policy of insurance against death "from an accidental cause;" but where the death is caused by his taking morphine, knowing at the time how much he was taking, but not knowing that such an amount would cause death, his beneficiary cannot recover on a policy of insurance against death "from an accidental cause."

**EVIDENCE:** *Presumptions.* In an action to recover indemnity under a certificate of insurance indemnifying against death from accidental cause, the presumption is against suicide, in the absence of any evidence pointing to suicide.

**BURDEN OF PROOF:** *Suicide.* The burden resting on plaintiff in an action upon a certificate of insurance indemnifying against death from accidental cause, is not met, where the evidence is equally as consistent with a cause not accidental as with an accidental cause.

*Appeal from Polk District Court.*—HON. W. A. SPURRIER, Judge.

TUESDAY, OCTOBER 11, 1898.

ACTION on accidental insurance policy.    Judgment for plaintiff, and defendant appeals.—*Reversed.*

*Cummins, Hewitt & Wright* for appellant.

*Baily & Ballreich* for appellee.

LADD, J.—When the certificate of membership was issued to Oliver D. Carnes the constitution of the association provided for indemnity whenever the death of a member occurred "from an accidental cause, except while said member shall be under the influence of intoxicating liquors or narcotics." As afterwards amended, the articles of incorporation and by-laws, with the same exception, limited such indemnity to injuries "effected through or by external, violent, and accidental means." We may determine, then, at the outset, whether the liability of the association is fixed by the constitution and by-laws at the time the certificate was issued or those in force when Carnes died. The certificate entitled him to "all the benefits accruing from such membership, under the provisions of the constitution and by-laws of the association. Now, the by-laws relate entirely to the manner of transacting the business, and the constitution contained all the provisions with respect to the terms and conditions of insurance. The power to amend the by-laws was limited to matters not provided for in the constitution, and that could be revised or amended only on a two-thirds vote of the members. Nothing in it authorized the association to amend, and thereby bind a member to any change in the contract without his assent, nor do the amended articles purport to change existing contracts or to authorize any such change by the adoption of by-laws. In the absence of such provisions, the articles and by-laws as amended cannot be treated as retroactive in their operation. Mere silence as to the effect of revision and amendment of the constitution and by-laws will not warrant the inference that any change wrought will limit

or extend the obligation theretofore created by the issuance of certificates of membership. Statutes are construed so as to give them a prospective operation, unless the intention that they operate retrospectively is clear and undoubted, and it is not perceived why the same canon of construction should not be applied to the rules adopted by a mutual insurance association for the transaction of its business and the government of its members. *Hobbs v. Association,* 82 Iowa, 107; *Sieverts v. Association,* 95 Iowa, 710; *Benton v. Brotherhood,* 146 Ill. 570 (34 N. E. Rep. 939). Of the contention that, by changing from a voluntary to an incorporated association, the former ceased to exist, and recovery must be had, if at all, under the articles and by-laws of the latter, it is enough to say that such an issue is neither raised in the pleadings nor established by the proof.

II. As no evidence indicated Carnes to have been under the influence of intoxicating liquors or narcotics, the important inquiry was whether his death occurred from an accidental cause. The testimony is not in conflict. On the sixteenth day of March, 1896, being Monday, he was suffering from neuralgia in the face, and remained at home during the afternoon and the following day. He obtained morphine from some source, and during this time took it for the relief of the pain. He went out for whisky Tuesday, but is not known to have obtained any. The physician found him that day lying on a cot, with clothes on, complaining of pain and soreness in his face and the back of his neck, and was informed by Carnes that he had taken, during Monday night, two quarter-grain tablets of morphine. The doctor prescribed tablets with no morphine in them, and whisky, which was administered in the form of a hot punch. He undressed and went to bed downstairs, his clothes remaining in the room. His wife left him at about 10 o'clock P. M., and found him unconscious at 6:30 the following morning. In the meantime he had taken none of the whisky or tablets prescribed, and no morphine was found in the room or about

his clothes. He continued in a comatose condition for about four hours, when he died. That his death was caused by morphine taken between the time his wife left his bedside on Tuesday evening and when she found him dying the next morning is conceded. How much morphine he took is not known, but it was enough to cause death, and the physicians differ somewhat as to the amount necessary to do this. There are three possible ways to account for Carnes' death: (1) He may have taken the morphine with the purpose of committing suicide; (2) he may have taken more than he intended,—that is, several quarter-grain tablets instead of one or more; and (3) he may have intended to take the amount he did, and misjudged the effect it would produce. There is nothing in the evidence or surrounding circumstances pointing to suicide, and, as every one is supposed to be endowed with the instinct of self-preservation, he will be presumed not to have voluntarily ended his life. *Insurance Co. v. McConkey*, 127 U. S. 661 (8 Sup. Ct. Rep. 1360); *Cronkhite v. Insurance Co.*, 75 Wis. 116, 17 Am. St. Rep. 184, (43 N. W. Rep. 731); *Mallory v. Insurance Co.*, 47 N. Y. 52; *Freeman v. Insurance Co.*, 144 Mass. 572 (12 N. E. Rep. 372); *Insurance Co. v. Wiswell*, 56 Kan. Sup. 765 (44 Pac. Rep. 996). See 1 Am. & Eng. Enc. Law, 331. He must, then, have either taken more morphine than he intended, or taken what he intended and misjudged its effects. If he took more than he intended,—that is, intended to take one or two quarter grains, and, by mistake or inadvertence, took much more,—this was accidental, and, if death was so caused, the beneficiary is entitled to recover. But suppose he took just the amount of morphine he intended, and misjudged the effect it would produce; may death so occasioned be said to result from an accidental cause? Webster defines "accidental" as "happening by chance or unexpectedly; taking place not according to the usual course of things,"—and an "accident," as "an event that takes place without one's fore-

sight or expectation; an undesigned, sudden and unexpected event; chance; contingency. Such unforeseen, extraordinary, extraneous interference as is out of the range of ordinary calculation." It is defined in *Paul v. Insurance Co.,* 112 N. Y. 472 (20 N. E. Rep. 347), as the "happening of an event without the aid and design of a person, and which is unforeseen." See valuable notes to this case in 8 Am. St. Rep. 763. In *McGlinchey v. Casualty Co.,* 80 Me. 251 (14 Atl. Rep. 13), it is said: "The definition of 'accident' generally assented to is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual, and not expected, to the person to whom it happens." Bouvier thus defines "accident:" "An event which, under the circumstances, is unusual and unexpected by the person to whom it happens. The happening of an event without the concurrence of the will of the person by whose agency it was caused; or the happening of an event without any human agency." The courts have frequently defined accident, and an examination of the authorities indicates but little difference of opinion. See *Lovelace v. Association,* 126 Mo. Sup. 104 (28 S. W. Rep. 877); *Supreme Council v. Garrigus,* 104 Ind. 133 (3 N. E. Rep. 818); 1 Am. & Eng. Enc. Law, 291. It will be observed that this policy insures against death from an accidental cause, and not an accidental death. It is possible that under the definitions referred to the death of Carnes was accidental, but if he took the amount of morphine intended, and a result not anticipated occurred, then the cause of his death was not accidental, for he intended to do the very thing he did. The morphine was, under the circumstances, taken by design. The result only was unforeseen,—unintended. This distinction was recognized by Judge Dyer in *Barry v. Association,* 23 Fed. Rep. 712, who, in charging the jury said: "The term 'accident' is here used in its ordinary, popular sense, and in that sense it means happening by chance,—unexpectedly; taking place not according to the usual course of things, or not as

expected. In other words, if a result is such as follows from ordinary means voluntarily employed, in a not unusual or unexpected way, then, I suppose, it cannot be called a result affected by accidental means. But if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted from accident or through accidental means." See Id., 131 U. S. 100 (9 Sup. Ct. Rep. 755). In 3 Joyce Insurance, section 2863, quoting from *Clidero v. Insurance Co.*, 29 Scot. L. R. 303, it is said that "a person may do a certain act, the result of which act may produce unforeseen consequences, and may produce what is commonly called 'accidental' death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental." See, also, *American Accident Co. v. Carson*, 99 Ky. 441 (30 S. W. Rep. 879). Now, it is impossible to say, from the evidence, whether Carnes took more morphine tablets than he intended to take, or whether he took just what he did intend, and misjudged their effects. Death might have been occasioned in either way, and one is as likely as the other. Under such circumstances, can it be left to the jury to guess which? The burden of proof was upon the plaintiff to show that death resulted from an accidental cause, and, the evidence leaving this unestablished, she failed to make out a case. It is said, however, that death will be presumed to have resulted from accident, and that the burden of proof is upon the defendant to show the contrary. But an examination of the case does not sustain this contention. They go no further than to hold that, where the insured has introduced evidence tending to show an injury to be the result of an accident, the burden of proof is on the insurer to establish as a defense that the insured was within some exceptions of the policy. See *Hess v. Association*, 112 Mich. 196 (70 N. W. Rep. 460); *Bedenfeld v. Association*, 154 Mass. 77 (27 N. E. Rep. 769); *Association v. Wiswell*, 56 Kan. Sup. 765 (44

Pac. Rep. 996).   The plaintiff wholly failed to prove the cause to have been accidental, and this will not be presumed. It was necessary to do this in order to bring the case within the terms of the policy.—REVERSED.