UNITED STATES CASUALTY COMPANY *v.* GRIFFIS.

[No. 22,851. Filed November 21; 1916. Rehearing denied February 16, 1917.]

1. INSURANCE.—*Accident Insurance.—Accidental Death.—Death from Ptomaine Poisoning.*—Death resulting from eating mushrooms tainted with ptomaine poisoning is death from accidental means and an insurance company is liable in such a case, under an accident policy indemnifying "against loss resulting directly and independently of any and all other causes from bodily injury effected solely through external, violent, and accidental means." p. 127.

2. APPEAL.—*Questions Reviewable.—Briefs.*—Error in sustaining a demurrer is waived by failure of appellant to comply with Rule 22 of the Supreme Court in the preparation of its brief. p. 132.

From Jay Circuit Court; *James J. Moran,* Special Judge.

Action by Grace Griffis against the United States Casualty Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*J. W. Fesler, Harvey J. Elam, Howard S. Young, Focht & Hutchens* and *LaFollette & McGriff,* for appellant.

*John W. Macy, Alonzo L. Nichols, Alonzo Bales, James P. Goodrich* and *George H. Ward,* for appellee.

MORRIS, J.—Suit by appellee against appellant on an accident insurance policy. The first paragraph of com-

1. plaint alleges that appellant insured appellees' husband, James R. Griffis, "against loss resulting directly and independently of any and all other causes from bodily injury effected solely through external, violent and accidental means"; that said James R. Griffis lost his life by such means because he ate mushrooms tainted with ptomaine poison; that death was not contributed to by disease, either directly or indirectly. A second paragraph of complaint differed from the first in that it alleged that the death resulted from the accidental eating or drinking of a poisonous substance, the nature of which was unknown. A demurrer to each paragraph was overruled. There was a trial with verdict and judgment for appellee for $6,645. Appellant here challenges the sufficiency of each paragraph of complaint, and also the sufficiency of the evidence. The policy expressly exempted appellant from liability for injury "resulting from or contributed to, directly or indirectly, wholly or partially, by disease".

The evidence for appellee shows that formerly decedent Griffis was a lawyer of Randolph county; that immediately before his death he and his wife resided at Cleveland, Ohio, about four miles from the business center of the city; that on October 25, 1913, at about seven o'clock p. m., Mr. and Mrs. Griffis left their place of residence and went to a restaurant in the business center of the city for their evening meal, where Mr. Griffis ate some mushrooms at about eight o'clock p. m.; that thereupon they went home, arriving there at about nine o'clock p. m.; Mr. Griffis, about fifteen minutes thereafter, went to his bedroom to prepare for retiring, while Mrs. Griffis went to the bathroom to take a bath, and where she was occupied for about thirty minutes; that she then heard water running at a sink near Mr. Griffis' bedroom and went to turn off the water; on arriving at the sink she discovered a quanity of mushrooms that had been

vomited by her husband; she then went to Mr. Griffis' bedroom, and found him lying across his bed, dressed in his night clothes, moaning and unconscious; she immediately telephoned Dr. Placak, who arrived in fifteen minutes, and administered medical treatment without effect; at that time Mr. Griffis' pulse was low and rapid, his finger nails and lips were blue, and his face was cold and clammy, and of a greenish-white color; a half hour later Dr. Leichty, a physician skilled in handling ptomaine poison cases, was called into consultation; after the latter's arrival the patient vomited up some more mushrooms, was frothing at the mouth, and was unable to swallow anything; the two physicians resorted, without success, to various remedial measures, but death ensued shortly after midnight. Mr. Griffis never regained consciousness after his wife discovered him lying across his bed. She testified that at and before the time he partook of the mushrooms Mr. Griffis was in perfect health. Dr. Leichty testified that, in his opinion, ptomaine is an organic poison substance, produced by the action of bacteria on some nitrogenous matter, and that Mr. Griffis' death was caused solely by virulent ptomaine poison which was contained in the mushrooms that he had eaten. Medical experts called by appellant were of the opinion that organic diseases contributed to decedent's death, but the jury manifestly accepted the opinions of Dr. Leichty and other medical experts called by appellee. It is not contended by appellant that Mr. Griffis was guilty of any negligence in partaking of the mushrooms, or that in such act he intended to eat food containing a poisonous substance. *Paul* v. *Travelers' Ins. Co.* (1889), 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. 758, was decided by the New York Court of Appeals twenty-seven years ago, and has been approved quite generally by other courts. The principle declared was similar to the one here in-

volved. In that case one Paul was a guest at a hotel of New York City. He retired for the night and was discovered dead in his bed on the following morning. When the body was found the air in his sleeping chamber was strongly impregnated with illuminating gas. In an action on an accident policy indemnifying the beneficiary against loss by bodily injuries "through external violent and accidental means," the trial court held the guest's death accidental and awarded judgment to the beneficiary. The judgment was affirmed by the court of appeals in an opinion holding that "an accident is the happening of an event without the aid and the design of the person, and which is unforeseen. As to the point raised by the appellant, that the death was not caused by external and violent means, within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere as an external cause, was a violent agency, in the sense that it worked upon the intestate so as to cause his death. That a death is the result of accident, or is unnatural, imports an external and violent agency as the cause." The case was cited with approval by this court in *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 321, 75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St. 232, 6 Ann. Cas. 551.

Appellant vigorously assails the New York case, and those of other jurisdictions following it, and earnestly contends that, while the death may have been accidental and violent, it was not effected by accidental and violent means; that Mr. Griffis voluntarily ate the mushrooms, and the mere fact that an unexpected result followed in nowise makes the means accidental within the meaning of the language of the policy. In support of its theory appellant, among numerous other cases, cites that of *Smith* v. *Travelers' Ins. Co.* (1914), 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B 872, in which

liability was denied in a case where the deceased was afflicted with nasal catarrh, and was in the habit of using a nasal douche. On one occasion, while using the instrument, he "snuffed" harder than usual, with the result that streptococcus germs were carried from the nostrils through the Eustachian tube into the middle ear and thence penetrated the brain and resulted in his death from spinal meningitis. The Supreme Judicial Court of Massachusetts held that there was nothing accidental in the inhalation; that while the deceased "snuffed" harder than he had formerly done, he intended so to do, and that the external act was what he purposed; that though the result was unexpected, the means employed was not, and recovery was proper only when the means employed was accidental. The opinion deals with *Paul* v. *Travelers' Ins. Co., supra,* and some other cases, in the following language: "In *Healey* v. *Mutual Accident Association,* 133 Ill. 556 (9 L. R. A. 371, 23 Am. St. Rep. 637, 25 N. E. 52) the deceased did not know that what he drank was a poison; he took and drank it accidently. In *Jenkins* v. *Hawkeye Commercial Men's Asso.* 147 Iowa, 113, (30 L. R. A. [N. S.] 1181, 124 N. W. 199) the swallowing of the fish bone that caused the death of the insured was a mere accident. In *Maryland Casualty Co.* v. *Hudgins,* 97 Tex. 124 (64 L. R. A. 349, 104 Am. St. Rep. 857, 76 S. W. 745, 1 Ann. Cas. 252) the oysters which caused the death were eaten by the deceased in ignorance of their unsound condition. In *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472 (3 L. R. A. 443, 8 Am. St. Rep. 758, 20 N. E. 347) the deceased had no intention of inhaling the gas which caused his death. None of these decisions is inconsistent with the view which we take of the case at bar." This case is also cited by counsel for appellee who claim that it supports their contention that the injury here in question was caused by accidental

means, and this claim appears to us as well founded. Under the facts pleaded and proven Mr. Griffis intended only to eat wholesome mushrooms, but, unexpectedly to him, the mushrooms eaten contained a foreign substance that was a virulent poison and constituted an agency of such violent character as to subvert the normal functions of his vital organs and produce death possibly quicker than would have happened had the foreign substance been a corrosive acid poison. We quite agree with appellant's counsel when they say that the means must be accidental, and that a mere accidental result would not suffice under the language of this policy, but we are of the opinion that the unintentional taking of the poisonous substance contained in what deceased supposed to be edible mushrooms constituted an accidental means which caused the death. In support of our conclusion we cite the following: *Peele* v. *Provident Fund Soc.* (1896), 147 Ind. 543, 44 N. E. 661, 46 N. E. 990; *Johnson* v. *Fidelity, etc., Co.* (1915), 184 Mich. 406, 151 N. W. 593, L. R. A. 1916 A 475, and note 481 (a ptomaine poison case); *Bohaker* v. *Travelers' Ins. Co.* (1913), 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543; *Clark* v. *Iowa, etc., Assn.* (1912), 156 Iowa 201, 135 N. W. 1114, 42 L. R. A. (N. S.) 631; *Railway Mail Assn.* v. *Dent* (1914), 213 Fed. 981, 130 C. C. A. 387, L. R. A. 1915 A 314; *Hill* v. *Hartford, etc., Ins. Co.* (1880), 22 Hun (N. Y.) 187; *Kennedy* v. *Aetna Life Ins. Co.* (1903), 31 Tex. Civ. App. 509, 72 S. W. 602; *Pollock* v. *U. S. Mutual, etc., Assn.* (1883), 102 Pa. 230, 48 Am. Rep. 204; *Metropolitan, etc., Assn.* v. *Froiland* (1896), 161 Ill. 30, 43 N. E. 766, 52 Am. St. 359; *Healey* v. *Mutual, etc., Assn., supra; Dezell* v. *Fidelity, etc., Co.* (1903), 176 Mo. 253, 75 S. W. 1102; *Carnes* v. *Iowa, etc., Assn.* (1898), 106 Iowa 281, 76 N. W. 683, 68 Am. St. 306; *McGlinchey* v. *Fidelity, etc., Co.* (1888), 80 Me. 251, 14 Atl. 13, 6 Am. St. 190; *Jenkins*

v. *Hawkeye, etc., Assn., supra;* 1 C. J. 431, 432, 433. See, also, *Maryland Casualty Co.* v. *Hudgins, supra.*

It is contended by appellant that ptomaine poison is a disease, and that consequently a recovery for injury therefrom is expressly excluded by the terms of the policy. We are of the opinion that, under the facts disclosed here, the ptomaine poison did not constitute a disease within the meaning of the language of the policy exempting appellant from liability for injuries caused by disease. *Railway Mail Assn.* v. *Dent, supra; Brintons* v. *Turkey* (1905), A. C. 230, 2 Ann. Cas. 137 (anthrax infection case).

The complaint was sufficient to repel appellant's demurrers, and there was evidence that supported its material averments.

Appellant filed an amended fourth paragraph of answer to which the court sustained a demurrer.

2. Appellant seeks here to challenge such ruling; but because of its failure to comply with Rule 22 of this court in the preparation of its brief, it has waived its right to a consideration of the question.

Complaint is made of certain instructions given and of the failure to give requested ones. What we have said in reference to the complaint and evidence disposes of appellant's principal contentions relative to instructions given and refused. In other respects we are satisfied that there was no reversible error committed. Judgment affirmed.

NOTE.—Reported in 114 N. E. 83. Death by accidental means under the law of insurance, definition, 8 Am. St. 763; 1 Cyc 249, 250; 1 C. J. 427, 428. Construction of a clause in an accident insurance policy excepting death by disease, 5 Ann. Cas. 86; Ann. Cas. 1917 C 463.