FIDELITY & CASUALTY CO. OF NEW YORK v. GRINER.

No. 6136.

Circuit Court of Appeals, Ninth Circuit.

Nov. 10, 1930.

Chickering & Gregory, Evan Williams, Donald Y. Lamont, and Stephen R. Duhring, all of San Francisco, Cal., for appellant.

Edward J. McCutchen, John T. Pigott, and Harris K. Lyle, all of San Francisco, Cal., and H. B. Churchill, of Santa Rosa, Cal. (McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., of counsel), for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

Oliver T. Griner, a dentist aged sixty years, was insured by an accident policy of the appellant. He was bitten by a mad dog belonging to him and died within an hour and a half thereafter. The appellee, his widow, sued on the policy, and the appellant insurance company defended on the ground that decedent did not die as a result of bodily injury sustained through accidental means which resulted directly and independently and exclusively of all other causes in death, a condition fixed by the terms of the policy as that insured against. The widow recovered judgment, and the insurance company appeals.

The substance of the appellant's claim is that the evidence shows that the deceased had some organic disease which contributed to the resulting death, in which event it must be conceded that there can be no recovery by reason of the fact that in such case the injury was not the sole cause of death. In considering the case on appeal we must accept the testimony which supports the verdict, if substantial, and reject the evidence to the contrary; such issues having been determined by the jury. Consequently, we must assume that the deceased was in perfect health so far as known at the time he was bitten by the mad dog, as evidenced by his activities and mode of life, and as shown by medical testimony. There is no difficulty in the case until we come to consider the testimony of medical experts. All agree that the dog bite caused the death of decedent, the only difference is as to whether such a bite could cause a death in so short a time without some other super-inducing cause such as a diseased condition of the circulatory system. On this point the medical experts disagree, and we are bound to accept those opinions favorable to the verdict. All the medical testimony is to the effect that the death of the decedent was caused by angina pectoris and that this condition resulted from fright induced by the dog bite. In short, that the dog bite was the proximate cause of death, and that heart and circulatory convulsions known as angina pectoris, the manner of it. Upon such testimony there is a clear right of recovery so far as the cause of death is concerned, unless pre-existing disease was a contributing cause. The difference in the medical testimony is as to whether death would have resulted even from angina pectoris induced by fear, unless the decedent had some organic disease. The appellee not only introduced medical testimony to show an absence of disease but also a large amount of testimony to show that the decedent was able to do and did things by way of exercise and exertion, which, if he had organic disease causing angina pectoris, would have caused definite symptoms known as angina pectoris, which the doctors describe as a symptom complex, or at least some of them. No such symptoms were exhibited by the deceased.

It is claimed by the appellant that there is not a sufficient showing that the death resulted from accidental means. That is to say, as we understand it, the claim is that the decedent may have expressly or impliedly invited the mad dog to bite him, and that the burden is on the appellee to negative that possibility. This burden is sufficiently met by showing that the decedent was a man of ordinary intelligence and that he believed that the dog was mad, and that he did not desire to die, and died because he was afraid he

would die as a result of the bite. On this subject an instruction, No. 13, was requested by appellant and refused as follows:

"You are instructed that the term 'injury through accidental means,' as used in the policy of insurance under consideration, does not mean every 'accidental injury.' In one sense, anything that happens may be said to be an 'accident.' But in the sense in which the term is used in this policy, it is to be taken as meaning 'an event which proceeds from an unknown cause or as an unusual effect of a known cause, and therefore unexpected.' You are therefore instructed that if the injury alleged to have been sustained by Mr. Griner was to be expected as a result of the acts which Mr. Griner was performing at the time, your verdict must be against the plaintiff and in favor of the defendant."

By this instruction the jury were invited to speculate as to whether a man attempting to aid a mad dog which had been securely tied in his garage must expect, or reasonably expect, to be bitten by the dog. In view of the caution exercised by the decedent in wearing buckskin gloves when he visited the dog and his evident fear of contracting rabies, we think the general instructions given by the court sufficiently covered the legal question without the special invitation to speculate on such a subject as the possibility that the decedent may have been careless in handling the dog. There is no evidence of such carelessness.

The jury were instructed as follows:

"If you find that Dr. Griner suffered a mental and physical shock and fright from the attack and bite of the dog, and that said fright and shock caused Dr. Griner's death directly independently and exclusively of all other causes, your verdict shall be for the plaintiff."

It is claimed that this instruction assumed that the decedent was attacked and bitten by the dog and omitted the requirement that the injury must be the result of accidental means. These objections were not called to the attention of the trial court and for that reason cannot be considered here. Sacramento Sub. F. L. Co. v. Loucks (C. C. A.) 36 F.(2d) 921; Sacramento, etc. v. Weber (C. C. A.) 41 F.(2d) 514.

We do not decide whether there could be a recovery if there had been no bite, and hence do not enter into a discussion of that subject invited by the parties who cite and discuss the case of McGlinchey v. Fidelity & Cas. Co., 80 Me. 251, 14 A. 13, 6 Am. St. Rep. 190, on the subject of death from fright alone.

The matter of contributing disease is sufficiently covered by the instructions given that the plaintiff must prove by a preponderance of the evidence that the bodily injury resulted directly in death, that no independent cause contributed to said death, that the death was caused exclusively by said bodily injury, and that it was not enough for the plaintiff to prove that the death of Dr. Griner was a direct result of the injury, "but the burden is also upon her to prove that disease did not contribute to said death." The court also instructed the jury as follows:

"The court further instructs you that, if you are in doubt whether the death of Dr. Griner was due to the alleged injury, if any, or to heart disease, if any, your verdict must be in favor of the defendant."

This instruction is too favorable to the appellant, as it requires a decision in its favor in case of doubt, whereas the true rule is that theretofore stated in the instructions which required plaintiff to establish her case by a preponderance of the evidence. We hold, therefore, that it was not error to reject the appellant's proposed instructions 15, 17, 18, and 19 covering the same ground.

The appellant complains of the refusal to give its instructions Nos. 21 and 22. These instructions are substantially the same, and we therefore quote instruction No. 21 only, as follows:

"I charge you that if you believe from the evidence in this case that fright not proximately caused by bodily injury contributed to the death of Mr. Griner in any degree whatsoever, it is your duty to find a verdict against the plaintiff and in favor of the defendant The Fidelity and Casualty Company of New York."

That is, the jury was to be thereby instructed that if it could separate the fright of the mad dog from the fright of its bite, and find that the decedent was frightened partly by the dog and partly by its bite, there could be no recovery. It is argued by the appellant in this connection that the evidence shows that the decedent was worried over the dog and that his fear or fright was generated by that condition before he was bitten, and that this anticipatory fright was merged into and formed a part of the greater terror inspired by the bite and consequently there can be no recovery under the terms of the policy. It would seem to be a sufficient answer to this argument to point out that the decedent actually went out to look after the dog believing

that it was mad. Furthermore, it must have been apparent to the jury that the fear or terror of the decedent which caused his death was inspired by the belief that he had been inoculated with a virus that produces death in a most distressing form. A death which is inevitable unless Pasteur's attenuated virus is available for administration.

We think these instructions, Nos. 20 and 21, requested by appellant, invited speculation upon the sources of decedent's fright not shown by the evidence and were properly refused.

During the trial the court struck out certain opinion evidence given by Dr. Craig, appellee's witness, on the ground that he based his opinion upon hearsay evidence acquired after the death of decedent and upon evidence not before the jury. It is claimed that the error in admitting the evidence over appellant's objections was not cured by the order striking the evidence out. This position cannot be maintained. The general rule, to which there are few exceptions, is that the striking out of evidence cures the error in its admission. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141. Furthermore, it appears from the whole case that Dr. Craig based his opinion upon substantially the same facts given in the hypothetical questions submitted to other experts.

On cross-examination by appellant, Dr. Craig was questioned and answered as follows:

"Q. Doctor, on what do you base that last statement of yours? Witness. A. A few years ago Dr. Fearn's wife died here in Lakeport. It was a question of what caused her death. They had an autopsy done in San Francisco by a specialist there and I was told that there was nothing found in the heart at all that would lead us to believe that it was angina, but the death certificate was signed angina pectoris."

The appellant, who had elicited the answer, thereupon moved to strike out the answer as hearsay. The witness was asked to give his reason for an opinion expressed by him. He did so. The motion was properly denied. When that opinion was later on stricken out, all reasons given therefor might well have gone out with it, so far as they were not statements of fact with reference to the decedent's condition; but the appellant did not at that time again call the attention of the court to this statement of the witness to which it now objects, nor then ask to have it stricken out.

Judgment affirmed.