[No. 22807. Department One. April 28, 1931.]

THOMAS JOHN McNALLY, *Respondent*, v. MARYLAND CASUALTY COMPANY, *Appellant*.[1]

*Stephen V. Carey*, for appellant.

*Schwellenbach & Merrick*, for respondent.

MAIN, J.—This action is based upon an accident insurance policy. The cause was tried to the court and a jury. At the conclusion of the plaintiff's evidence, the defendant challenged the sufficiency thereof and moved for a dismissal, which motion was denied. At the conclusion of all the evidence, the challenge and motion were repeated, with a like ruling. The cause was submitted to the jury, and resulted in a verdict in favor of the plaintiff in the sum of $3,400. The defendant moved for judgment notwithstanding the ver-

[1]Reported in 298 Pac. 721.

dict, and in the alternative for a new trial; both of which motions being overruled, the defendant appeals.

The appellant was engaged in this state in the business of writing life, accident, and health insurance policies. Some years prior to March 12, 1927, the appellant had issued to the respondent an accident policy, which had been kept alive until subsequent to that date. The policy provided for indemnity against loss resulting from bodily injuries "effected independently and exclusively of all other causes directly through accidental means." Respondent testified that, on the date mentioned, during about the middle of the day, within the space of less than an hour, he took two drinks of about one ounce each of what he thought was Scotch whiskey. Shortly after taking the second drink, he was affected by nausea, and thereafter he became severely ill, and was not able to return to active business for many months. A doctor who was called to see him on May 4, 1927, and who thereafter treated him, described his condition as follows:

"Was called into McNally's case on May 4, 1927, having received a telephone call from Mrs. McNally, requesting that I come to see her husband. I first saw McNally about 8:00 o'clock in the evening of May 4th. I found him in bed partially disoriented—that is, he was not clear as to facts. He complained of seeing double, of pain in his abdomen. He had a partial drop of his hands and of his feet. He complained of numbness and a tingling sensation in his hands and his feet. I recognized immediately that the man was acutely ill and insisted upon his removal to the hospital promptly."

Prior to May 4th, the respondent had been treated by his regular family physician.

Respondent's theory of the action was that he intended to drink what he thought was Scotch whiskey, which contains grain or ethyl alcohol, but, without his

knowledge, he, in fact, drank a liquid in which there was methyl or wood alcohol, which is a poison; that his subsequent condition was due to this fact; and that his bodily injuries were due to accidental means. The theory of the appellant was that the respondent's condition was due to continuous and heavy drinking, with other predisposing causes.

The first question is whether the respondent intended to drink Scotch whiskey, but, by mistake and without his intent, drank wood alcohol, and, if he did drink the wood alcohol through mistake, whether that produced his condition. From the testimony of the respondent, the jury had a right to find as a fact that the respondent, while intending to drink Scotch whiskey which contains ethyl or grain alcohol, did not intend to drink wood alcohol. As to whether his condition was the result of wood alcohol poisoning, the medical testimony offered by the respective parties is directly in conflict. The doctor who was called to see respondent on May 4th, as above indicated, and who thereafter treated him, on cross-examination testified:

"I think that the conditions that I found when I saw Mr. McNally on May 4th were entirely due to wood alcohol poisoning. There might be a variety of contributing factors. In my opinion, his complaint was entirely due to alcoholic poisoning, assuming that his history is correct. There was no other contributing cause that I was aware of and my opinion is unqualified and absolute that the entire condition was due to one or not to exceed two small drinks of whiskey that he took about noon of March 12, 1927."

Two doctors were called by the appellant, and their testimony was to the effect that the respondent's disability was caused by the long and continuous use of alcohol, with syphilis as a predisposing cause. It will thus be seen that, under the testimony of the experts called by the respective parties, the question of

whether the respondent's disability was due to wood alcohol poisoning was distinctly a question of fact for the jury. The testimony of the doctor called by the respondent was substantial evidence upon which the jury had the right to base its verdict. It cannot be held, as a matter of law, that the respondent should have foreseen or expected the result, even though on cross-examination he testified:

"A. My impression at the start of it was that the liquor would be like the ordinary run that you would be getting. Q. Does that mean good or bad? A. Well, I suppose it is all bad enough."

In this testimony, the witness did nothing more than recognize that the ordinary run of liquor which is obtainable at this time "is all bad enough," but this is not sufficient to justify the court in taking the case from the jury and, as a matter of law, saying that he should have expected and foreseen the result.

The next question is whether there was an accident, within the meaning of the policy, if the respondent drank wood alcohol, which is a poison, when in fact he intended to drink Scotch whiskey. The policy, as above pointed out, indemnifies against loss from accidental means. The rule supported by the authorities is that where the insured intends to swallow what he does swallow, but is ignorant of the fact that it contains poison, and loss results therefrom, a recovery can be had upon a policy of insurance which indemnifies against loss by accidental means.

In *Zurich General Accident & Liability Ins. Co. v. Flickinger*, 33 Fed. (2nd) 853, the Federal circuit court of appeals for the fourth circuit held that where the insured intended to drink synthetic gin cocktails, with grain alcohol as one of the ingredients, and the cocktails contained wood alcohol which caused his death, the beneficiary under the policy, which, so far as is

here material, was in the exact language of that now before us, could recover. That is a late case, the authorities are there fully considered, and we will take the liberty of quoting rather extensively from the opinion, wherein it is said:

"On the first and principal contention of defendant, we think there can be no question that the death of insured resulted from accidental means within the meaning of the policy. Insured intended, it is true, to drink the cocktails which he did drink and which caused his death, but he did not intend to drink poisonous wood alcohol, and did not know that wood alcohol was contained in what he was drinking. The case falls squarely, therefore, within the oft-quoted rule laid down by Mr. Justice Blatchford in the leading case of *U. S. Mutual Accident Ass'n v. Barry,* 131 U. S. 100, 9 S. Ct. 755, 759, 33 L. Ed. 60: 'If in the act which precedes the injury something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted through accidental means.' Here the act which preceded the injury was the drinking of the supposed intoxicating beverage. And the thing which was 'unforeseen, unexpected or unusual' therein was the fact that it contained wood alcohol, a deadly poison. In other words, there was the unintentional and unexpected drinking by insured of a poisonous substance.

"Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, in *Western Commercial Travelers' Ass'n v. Smith,* 85 F. 401, 40 L. R. A. 653, laid down a definition of 'accidental means' which has been approved by the Circuit Court of Appeals of the Second Circuit in *Aetna Life Ins. Co. v. Brand,* 265 F. 6, 13 A. L. R. 657, and by this court in the recent cases of *Mutual Life Ins. Co. v. Dodge,* 11 F. (2nd) 486, 59 A. L. R. 1240, and *Continental Casualty Co. v. Willis,* 28 F. (2nd) 707. Said he:

" 'An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the na-

tural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, . . . is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.'

"There would seem to be no room for argument that under this definition a death which results from unintentionally drinking wood alcohol while supposedly drinking an ordinary gin cocktail is a death from accidental means. The case is entirely unlike that of *Calkins v. National Travelers' Ass'n,* 200 Iowa, 60, 204 N. W. 406, 41 A. L. R. 363, for there the insured drank exactly what he intended to drink, and his death was the natural consequence thereof. This case falls within the class of cases involving the unintentional taking of poison, cases in which the insured intended to swallow what he did swallow, but was ignorant of the fact that it contained poison. Such cases, without exception, have been held to involve death by accidental means. *Healey v. Mutual Accident Ass'n of the Northwest,* 133 Ill. 556, 25 N. E. 52, 9 L. R. A. 371, 23 Am. St. Rep. 637; *Travelers' Ins. Co. v. Dunlap,* 160 Ill. 642, 43 N. E. 765, 52 Am. St. Rep. 355, and note; *Carnes v. Iowa State Traveling Men's Ass'n,* 106 Iowa, 281, 76 N. W. 683, 68 Am. St. Rep. 306, and note; 1 C. J. 427. And see, also, the recent case of *Brown v. Continental Casualty Co.,* 161 La. 229, 108 So. 464, 45 A. L. R. 1521.

"In *Newsoms v. Commercial Casualty Ins. Co.,* 147 Va. 471, 137 S. E. 456, 52 A. L. R. 363, the death of insured was caused by eating a can of beans which produced ptomaine poisoning. In *United States Casualty Co. v. Griffis,* 186 Ind. 126, 114 N. E. 83, L. R. A. 1917F, 481, death was caused by eating poisonous

mushrooms, and in both cases the death was held to have been caused by accidental means. There can be no distinction between these cases and the case at bar, and the following extract from the opinion in the *Griffis* case exactly fits the situation presented here:

" 'Under the facts pleaded and proven, Mr. Griffis intended only to eat wholesome mushrooms; but, unexpectedly to him, the mushrooms eaten contained a foreign substance that was a virulent poison and constituted an agency of such violent character as to subvert the normal functions of his vital organs and produce death possibly quicker than would have happened had the foreign substance been a corrosive acid poison. . . . We are of the opinion that the unintentional taking of the poisonous substance contained in what deceased supposed to be edible mushrooms constituted an accidental means which caused the death.' "

We see no substantial distinction between that case and the one now before us, and the authorities cited in the opinion in that case sustained the holding.

The appellant relies upon three cases from the supreme court of the state of Iowa in support of its contention that there was no accident in this case within the meaning of the policy. In the case of *Carnes v. Iowa Traveling Men's Ass'n,* 106 Iowa 281, 76 N. W. 683, recovery was denied by the court upon the policy because it was impossible there for the jury to determine from the evidence whether the insured, who took a quantity of morphine tablets sufficient to produce death, took them purposely but misjudged their effect, or whether the same were taken inadvertently or by mistake. The inference from that opinion is that if the tablets had been taken inadvertently or by mistake, there would have been an accident within the meaning of the policy.

In *Martin v. Interstate Business Men's Acc. Ass'n,* 187 Iowa 869, 174 N. W. 577, it was held that the death of the assured, which was caused by acute indigestion

following food voluntarily selected and eaten with full knowledge of its character, was not the result of accidental means. The court in that case clearly recognized the rule above stated upon which liability may rest, and pointed out that the case then before it did not come under the rule. It was there said:

"This case is clearly distinguishable from those cases in which the company was held liable where one ate food containing ptomaine poison, without knowledge of the fact that it contained ptomaine poison, and death resulted, not from the failure of the food to digest, but from the effect of the poison."

The case of *Calkins v. National Travelers' Ben. Ass'n,* 200 Iowa 60, 204 N. W. 406, is to the same effect.

In none of those cases was it held that, when the assured intends to swallow something which does not contain poison, but in fact swallows something which does contain poison, the loss suffered by the bodily injury was not caused by accidental means. It is our opinion that the rule supported by the case of *Zurich General Accident & Liability Ins. Co. v. Flickinger, supra,* and the authorities therein cited, is reasonable and just, and is applicable to the facts in this case as the jury had a right to find them.

Some complaint is made about the failure of the trial court to give two of the appellant's requested instructions in their entirety, but we find no error in this regard.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.