## Woods v. Provident Life & Accident Insurance Company of Chattanooga.

(Decided October 6, 1931.)

T. B. CULTON for appellant.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Reuben Woods instituted this action in the Whitley circuit court against the Provident Life & Accident Insurance Company of Chattanooga, basing his action on an accident insurance policy, which was issued to him by that company. Among other provisions, subject to certain conditions and limitations, and which need not be recited, the policy provided for payment of monthly accident indemnity in the sum of $100 to the insured for such time as he might be wholly and continuously disabled from performing any and every duty pertaining to his occupation, and "resulting directly and exclusively of all other causes from bodily injuries sustained during the life of the policy solely through external, violent and accidental means. . . ."

Part XIII, section 3, of this policy, provides:

This policy does not cover injuries, fatal or non-fatal, sustained by the insured: . . . (3) while under the influence of or affected by intoxicants or narcotics; (4) if said fatal or non-fatal injuries result from the intentional act of the insured. . . ."

In his petition, as amended, the insured set out so much of the policy as related to indemnity for death or disability, and continued with the following allegations:

"Plaintiff states that on or about the 29th day of March, 1930, while said policy was in full force and effect this plaintiff, insured, did sustain personal bodily injury which was effected directly and independently of all other causes through external, violent and accidental means, and which resulted in wholly and continuously disabling and actually preventing the insured from performing any and every duty pertaining to his occupation of switchman, for the Louisville and Nashville Railroad Company, on the 29th day of March, 1930; and he has been wholly and continuously disabled and actually prevented from performing any and every duty pertaining

to his occupation of switchman for the Louisville & Nashville Railroad Co. since about the 29th day of March, 1930, up to and including the present time and will be wholly and continuously disabled and actually prevented from performing any and every duty pertaining to his occupation as switchman of the Louisville & Nashville Railroad Company, as long as the plaintiff lives and he now being 44 years of age has expectation of life, according to Dr. Wigglesworth's Table (which is Table II found in Ky. Statutes) 24.25 years.

"Plaintiff says he received said injuries as follows: By taking on or about the 27th day of March, 1930, for medicinal purposes a poisonous concoction; that he had no information or knowledge that poison was in said concoction which poison through the processes of nature did on March 29, 1930, paralyze his legs, feet, arms, hands and other parts of his body, producing what is commonly known as 'Jake Paralysis' or multiple neuritis, and which wholly and continuously disabled and actually prevented him from performing every and any duty pertaining to his occupation of switchman for the Louisville and Nashville Railroad Company or any other occupation since the 29th day of March, 1930, up to and including the present time; which poisonous concoction taken was marked and labeled U. S. P. Fluid Extract of Jamaica Ginger, purported to be manufactured in accordance with the scientific formula of the United States Pharmacopoeia and acts of Congress and thought by him to be the harmless proprietary medicine, Fluid Extract of Jamaica Ginger, commonly used for colds, cramps, and other ailments as a medicine, and was so labeled on the bottle, and thought by him at the time of taking to be a harmless medicine and when taken for the cold he then had in the quantity taken, would effect a cure of his cold; but said poisonous concoction was not manufactured according to the scientific formula of the United States Pharmacopoeia or any other scientific formula and in violation of law, was a poison, which when used in the quantity taken by him produced 'Jake Paralysis' or multiple neuritis."

He prayed for judgment for the sum of $900. In a second paragraph, he, in substance, alleged that his dis-

ability is total and permanent, and is and will continue to result in total loss of time, and disable and prevent him from performing any and every duty pertaining to his occupation so long as he lives; that his life expectancy, as shown by mortality tables, is 24.25 years. He asks for recovery of the monthly accident indemnity for that period amounting to the sum of $29,220.

The court sustained a demurrer to the petition as amended, and, from a judgment dismissing his petition upon failure to further plead, insured has prosecuted this appeal.

The question to be determined is whether appellant's condition is attributable to accidental means, resulting directly and exclusively of all other causes from bodily injuries sustained solely through external, violent, and accidental means within the meaning of the policy, and, if so, whether at the time of the accident insured was under the influence of or affected by intoxicants or narcotics, or whether such injuries resulted from the intentional act of the insured.

An accident is defined by Webster's New International Dictionary as:

> "An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event; chance; contingency; often an undesigned and unforeseen occurrence of an afflictive or unfortunate character."

According to the allegations of his petition, insured voluntarily and intentionally drank the mixture which he thought to be fluid extract of Jamaica ginger, prepared according to a standard and approved formula, and recognized, prescribed, and used as a remedy to alleviate human ills. The drinking was not an accident as defined by Webster, for it was done by design, but he did not know that it contained a foreign substance or poison which would cause paralysis of legs and arms, so the definition peculiarly fits the facts in this case as made to appear by the allegations of the petition.

In the leading case of U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 759, 33 L. Ed. 60, it is said:

> "If in the act which precedes the injury something unforeseen, unexpected, unusual, occurs, which

produces the injury, then the injury has resulted from the accident, or through accidental means.''

In Western Commercial Travelers' Ass'n v. Smith (C. C. A.) 85 F. 401, 405, 40 L. R. A. 653, the court said:

"An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.''

This is cited with approval in the following and many other cases: Ætna Life Ins. Co. v. Brand (C. C. A.) 265 F. 6, 13 A. L. R. 657; Mutual Life Ins. Co. v. Dodge (C. C. A.), 11 F. (2d) 486, 59 A. L. R. 1290; Continental Casualty Co. v. Willis (C. C. A.), 28 F. (2d) 707, 61 A. L. R. 1069; Zurich General Accident & Liability Ins. Co. v. Flickinger (C. C. A.), 33 F. (2d) 853, 854, 68 A. L. R. 161.

From an extensive examination of authorities, we find the general rule to be that, where the insured intends to swallow the food or drink which he does swallow, but is in ignorance of the fact that the substance swallowed contains a poison from which injury or death results, such injury or death is the result of "accident" or "accidental means," within the meaning of an accident insurance policy which indemnifies against injury or death by accidental means. McNally v. Maryland Casualty Co. (Wash.) 298 P. 721; Zurich General Accident & Liability Ins. Co. v. Flickinger, supra; Healey v. Mutual Accident Ass'n, 133 Ill. 556, 25 N. E. 52, 9 L. R. A. 371, 23 Am. St. Rep. 637; Travelers' Ins. Co. v. Dunlap, 160

Ill. 642, 43 N. E. 765, 52 Am. St. Rep. 355; Carnes v. Iowa State Traveling Men's Ass'n, 106 Iowa, 281, 76 N. W. 683, 68 Am. St. Rep. 306; Newsoms v. Commercial Casualty Ins. Co., 147 Va. 471, 137 S. E. 456, 52 A. L. R. 363; U. S. Casualty Co. v. Griffis, 186 Ind. 126, 114 N. E. 83, L. R. A. 1917F, 481. And such injury or death is caused from "external" and "violent" means, within the meaning of those terms as used in such policies. American Accident Co. v. Reigart, 94 Ky. 547, 23 S. W. 191, 15 Ky. Law Rep. 469, 21 L. R. A. 651, 42 Am. St. Rep. 374; Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464, 45 A. L. R. 1521; Dezell v. Fidelity Co., 176 Mo. 253, 75 S. W. 1102; Healey v. Mutual Accident Ass'n, of the Northwest, supra; Jenkins v. Hawkeye Commercial Men's Ass'n, 147 Iowa, 113, 124 N. W. 199, 30 L. R. A. (N. S.) 1181, and list of cases in annotation.

In the Zurich Accident & Life Insurance Company v. Flickinger, supra, insured was served by his friend and host with synthetic gin cocktails, which were prepared by mixing what was thought to be grain alcohol with other ingredients. On the following day insured and others who had partaken of the cocktails were stricken with violent illness, with symptoms of wood alcohol poisoning, and the illness of insured proved fatal. Analysis disclosed that the beverage contained wood alcohol.

Among other things, the opinion said:

"We think there can be no question that the death of insured resulted from accidental means within the meaning of the policy. Insured intended, it is true, to drink the cocktails which he did drink and which caused his death, but he did not intend to drink poisonous wood alcohol, and did not know that wood alcohol was contained in what he was drinking. The case falls squarely, therefore, within the oft quoted rule laid down by Mr. Justice Blatcherford in the leading case of U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 759, 33 L. Ed. 60. . . ."

The opinion further quoted the definition of "accidental means" given in Western Commercial Travelers' Ass'n v. Smith, supra, and said:

"There would seem to be no room for argument that under this definition a death which results from

unintentionally drinking wood alcohol while supposedly drinking an ordinary gin cocktail is a death from accidental means.''

In the McNally case, supra, insured unwittingly drank wood alcohol when he thought he was drinking Scotch whisky.

The similarity between the facts in this case, as shown by the petition and the facts in the Zurich and McNally cases, is so marked as to preclude extended comparison. In each instance, the insured intended to drink what he did drink, but in neither instance did he intend to drink a poison. In each case, the act which preceded the injury was taking the drink, but the unforeseen, unexpected, unusual, and fortuitous happening was that the drink contained a poison which the insured did not intend to drink. Thus this case, along with the cases mentioned, comes within the definition hereinbefore set out; and it cannot be distinguished by reason of the provision relieving the company from liability, if the fatal or non-fatal injuries result from the intentional act of the insured, since the petition makes it to appear that the drinking of the poison was not an intentional act of the insured.

The insistence of appellee's counsel that it is relieved of liability because of provision that the policy does not cover injuries sustained by insured while under the influence of or affected by intoxicants or narcotics is equally untenable. There is nothing in the pleading indicating or from which it may be inferred that insured was under the influence of or affected by intoxicants or narcotics within the meaning of the policy when he sustained the alleged injury.

The overwhelming weight of authorities leads us to the conclusion that the court erred in sustaining a demurrer to the first paragraph of appellant's petition.

Appellant's counsel does not seriously contend that the second paragraph of the petition is not subject to demurrer, but very frankly admits that he has been unable to find any authorities indicating a right of recovery under that paragraph. In fact, none can be found.

The policy provides when and how the monthly accident indemnity shall be paid, and appellant will be confined to the provisions of the policy in that respect.

For the reasons indicated, the judgment is reversed and the cause remanded to the lower court for proceedings consistent with this opinion.