RENDERED:  FEBRUARY 18, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0618-DG

BRENT FOREMAN, KATHLEEN FOREMAN,                    APPELLANTS
AND LOGAN FOREMAN


                    ON REVIEW FROM COURT OF APPEALS
V.                        NO. 2016-CA-1949
           JEFFERSON CIRCUIT COURT NO. 14-CI-004773


AUTO CLUB PROPERTY-CASUALTY                          APPELLEE
INSURANCE COMPANY


### OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### AFFIRMING

Brent and Kathleen Foreman brought a declaratory judgment action in the circuit court to establish that Auto Club Property-Casualty Insurance Company owed payment under a homeowner's insurance policy for property damage caused by a house fire started by their teenage son, Logan, in a suicide attempt.  Auto Club denied liability based on the intentional-loss exclusion in the policy.

The circuit court granted summary judgment in the Foremans' favor. The trial court's judgment declared the exclusion inoperative because Logan was "of such unsound mind as to render him incapable of forming an intent to cause a loss as defined under [the Auto Club policy]."

The Court of Appeals reversed the judgment, holding that the trial court's summary judgment erroneously ignored unambiguous policy language that stated an objective component for judging Logan's reasonable expectation of property damage when he ignited gasoline-soaked furniture in the basement of the home. Viewed objectively, undisputed evidence triggered the exclusion. Citing with approval the reasoning from *Nationwide Mutual Insurance Company v. May*,[1] the Court of Appeals remanded the case to the trial court for further proceedings, holding the Foremans have the burden of proof to overcome the exclusion with evidence that Logan lacked mental capacity to understand the physical consequences of his act, regardless of whether he could discern right from wrong, and noting substantial evidence already of record that precluded summary judgment in favor of the Foremans under that objective standard.

On discretionary review, we agree with the Court of Appeals' analysis that the trial court's grant of summary judgment in favor of the Foremans was erroneous. However, we remand this case to allow the Foremans an opportunity to litigate a potential lack of capacity defense consistent with *Stone v. Kentucky Farm Bureau Mutual Insurance Co.*[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that Logan, Brent and Kathleen's then sixteen-year-old son lived at home with them when he set fire to the family home in a suicide attempt. In a disturbed mental state only few days after his release from a

---

[1] 860 F.2d 219 (6th Cir. 1988).

[2] 34 S.W.3d 809, 811 (Ky. App. 2000).

psychiatric hospitalization, while his family slept, Logan piled his school books onto a couch in the basement of the family home and doused the couch and books with gasoline before returning to his bedroom on the second floor. Early the next morning before the family arose, he returned to the basement, set the couch ablaze, and returned to his upstairs bedroom to await the outcome. Logan later admitted to investigators that he started the fire to take his own life. The resulting fire damaged the home to the point that it was uninhabitable for an extended period. Brent and Kathleen made a property-damage claim under their Auto Club homeowner's policy, and Auto Club denied payment, relying upon the intentional-loss exclusion in the policy.

The pertinent policy provisions read:

EXCLUSIONS

We do not insure under Part 1 [Property Insurance Coverages] - Property Insurance Coverages for loss caused directly or indirectly by any of the following, regardless of the cause of the excluded event or damage; other causes of the loss; whether any other cause or event acts produce the loss; or whether the loss or event occurs suddenly or gradually, involves isolated or widespread damage or occurs as a result of any combination of these.

\*\*\*

9. **Any action by** or at the direction of **an insured person** committed with the intent to cause a loss, or **that could be reasonably expected to cause a loss**.[3]

---

[3] (emphasis supplied) At all relevant times Brent, Kathleen, and their son, Logan, were considered "insured persons" as defined in the homeowner's policy. The policy also contained a "joint obligations" clause, which provided:

"The terms of this policy impose joint obligations on all persons defined as insured persons. This means that the responsibilities, acts and failures to act of any person defined as an insured person will be binding upon any other person defined as an insured person.

3

However, this exclusion does not apply to loss to the covered property of an innocent co-insured if the loss:

a. arose out of a pattern of domestic violence; and

b. the perpetrator of the loss is criminally prosecuted for the act of causing the loss.

Brent and Kathleen sued Auto Club in the circuit court for a declaration of rights under the terms of their policy. When Logan reached the age of majority during the pendency of the suit, Auto Club asserted a separate indemnity claim against him. Logan then asserted his own claim against Auto Club, denying any liability.

All three Foremans moved for summary judgment, and the trial court granted it, focusing on Logan's lack of mental capacity to form intent to be responsible for intentionally causing damage to the property. Auto Club appealed the judgment, and the Court of Appeals reversed and remanded the case to the trial court for further proceedings.

## II. ANALYSIS

### A. Standard of Review.

A party seeking a declaratory judgment "may, at any time . . . move with or without supporting affidavits for a summary judgment in his favor."[4]  In

---

This does not apply to loss to covered property of an innocent co-insured if the loss arose out of a pattern of domestic violence and abuse, and the perpetrator of the loss is criminally prosecuted for the act causing the loss."

Importantly, Brent and Kathleen Foreman concede that if the exclusion applies to Logan, it also precludes them from receiving coverage under the policy. See also *American Hardware Mut. Ins. Co. v. Mitchell*, 870 S.W.2d 783, 785 (Ky. 1993) (explaining homeowners' insurance policies may be written to preclude innocent co-insureds from coverage).

[4] Kentucky Rule of Civil Procedure (CR) 56.01.

cases in which the trial court has granted summary judgment in a declaratory judgment action and no bench trial is held, we use the appellate standard of review for summary judgments.[5]

When reviewing a trial court's grant of summary judgment, we determine whether the record supports the trial court's conclusion that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[6] "Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to the trial court's assessment of the record or its legal conclusions."[7]

The interpretation of insurance contracts is a matter of law, so our review is de novo.[8] Foremost in interpreting an insurance contract we are bound by the specific language of the contract before us.[9] We apply certain rules of construction to insurance contracts, including a rule that when the terms of an insurance contract are unambiguous and not unreasonable, they

---

[5] *Ladd v. Ladd*, 323 S.W.3d 772, 776 (Ky. App. 2010).

[6] Kentucky Rule of Civil Procedure (CR) 56.03.

[7] *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (citing *Malone v. Kentucky Farm Bureau Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky. 2009)).

[8] *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010).

[9] *Nationwide Mut. Ins Co. v. Hatfield*, 122 S.W.3d 36 (Ky. 2003) ("In Kentucky, the exclusionary or limiting language in policies of automobile insurance must be clear and unequivocal and such policy language is to be strictly construed against the insurance company and in favor of the extension of coverage.").

will be enforced as written.[10]  Unambiguously defined terms are "interpreted in the light of usage and understanding of the average person."[11]  Ambiguous terms and the language of exclusions are strictly construed against the insurer so as not to defeat the policyholder's reasonable expectation of coverage.[12]  But "this rule of strict construction certainly does not mean that every doubt must be resolved against the insurer and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the plain meaning in the contract."[13]  In our interpretation, therefore, we consider what could be reasonably expected by the insured from the plain contract language, as it is controlling.

### B. The Court of Appeals correctly reversed and remanded for examination of the insured's reasonable expectation of loss.

Relying upon its reading of this Court's application of the reasonable-expectations doctrine as discussed in *James Graham Brown Foundation, Inc. v. St. Paul Fire and Marine Insurance Company*,[14] the trial court ruled the

---

[10] *Wehr Constructors, Inc. v. Assurance Co. of America,* 384 S.W.3d 680, 685 (Ky.2012).

[11] *Stone v. Kentucky Farm Bureau Mut. Ins. Co.,* 34 S.W.3d 809, 811 (Ky.App. 2000).

[12] *Id.*

[13] *Tower Ins. Co. of N.Y. v. Horn*, 472 S.W.3d 172, 174 (Ky. 2015) (citing *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 630 (Ky. 2005)).

[14] 814 S.W.2d. 273 (Ky. 1991). This, in turn, leads to why the circuit court achieved an illogical result. Here, there is no dispute that the objective component of the intentional-acts exclusion is *satisfied.* As the appellees themselves concede on page thirteen of their collective brief, "It is obvious to this Court and to counsel that lighting a fire in the basement would require some burning the [sic] home in order reach [sic] a second (2nd) floor bedroom. A rational person would, of course, foresee that the fire in the basement would spread to the other parts of the home."

6

disputed exclusion inapplicable, reasoning that the reasonable expectation of loss must be viewed from Logan's subjective viewpoint: when he set the fire, the trial court reasoned, Logan lacked mental capacity to form the intent to damage the home.

We agree with the Court of Appeals' that the trial court misapplied *Brown Foundation,* holding instead the coverage exclusion must be read from an objective viewpoint to exclude from coverage a "loss . . . caused directly or indirectly by any action by . . . an insured person . . . that could be reasonably expected to cause a loss." The Court of Appeals correctly concluded that, when viewed objectively, Logan's act of setting fire to the couch he soaked with gasoline was an intentional act that "could reasonably be expected to cause" some physical damage to, or destruction of, tangible property.[15]

In ascertaining the meaning of contract language, as previously discussed, we begin with the text of the policy so that "the words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning."[16] We find the contract language here to unambiguously exclude coverage for acts that, when judged objectively, could be reasonably expected by the insured to cause a loss. As a result, we find, as the Court of Appeals found, that an insured would reasonably expect that igniting a

---

[15] The policy defines *loss* as physical injury to, or destruction of, tangible property.

[16] *Nationwide Mut. Ins. Co. v. Nolan,* 10 S.W.3d 129, 131 (Ky. 1999).

gasoline-soaked couch, as Logan unquestionably did, could reasonably be expected to burn. So, summary judgment in favor of the Foremans was error.

But, as the Court of Appeals discussed, despite that error in granting summary judgment to the Foremans, they may still be able to pursue payment under their policy. Courts generally hold that intentional-act exclusions do not apply if the insured was suffering from a lack of mental capacity at the time of the act.[17] This Court has not directly encountered the lack-of-mental-capacity defense to defeat intentional-act exclusions, but we do so today.

Allowing a mental-incapacity defense potentially to defeat an intentional-act exclusion accords with the reasonable-expectation principle that all insurance contracts are to be construed to give effect to the coverage the insured reasonably expected while allowing insurers to protect themselves from unreasonable exposure.[18] Intentional-act exclusions are included in contracts to prevent the insured from manipulating the risk and thereby receiving a financial benefit from the consequences of the loss a loss intended or expected by the insured.[19] In contrast, though, an individual who lacks mental capacity to conform his conduct will not be influenced by the existence or nonexistence

---

[17] Steven Plitt & Aeryn E. Heidemann, *Are You Crazy?: Determining Mental Capacity As A Pre-Requisite To The Attachment of an Intentional Act Exclusion*, 32 Ins. Litig. Rep. 623, 623 (2010).

[18] Steven Plitt et al., 13 *Couch on Ins.* § 186:50 (3rd ed 2020) ("Insurance companies have the right to limit coverage in any manner the insurer desires so long as the limitations do not conflict with statutory provisions or public policy.").

[19] Plitt & Heidemann, *supra* note 15.

8

of coverage.[20]  So it seems consistent with our reasonable-expectations policy to protect insureds from conduct no one could foresee in the rare instance where mental incapacity may apply.

Although the current contract provision is to be judged objectively, a mental-incapacity defense remains available to the Foremans.  An objective analysis requires us to ask what loss, when judging the circumstances objectively, could Logan reasonably expect to result from his intentional actions.[21]  The insured's intention may be "proven either by direct evidence of 'actual' intent, or it may be 'inferred by the nature of the act and the accompanying reasonable foreseeability of harm.'"[22]

Determining whether loss could reasonably be expected requires a determination of what results were reasonably foreseeable to the insured at the time the insured acted.[23]  This includes considering the insured's knowledge

---

[20] *Id.*

[21] *May,* 860 F.2d at 223 ("Kentucky courts have more generally concluded that an intentional act exclusion will be invoked when the injury is a foreseeable or expected consequence of the actor's volitional acts, and not merely fortuitous or accidental.") (*See, e.g., Woods v. Provident Life & Accident Ins. Co.*, 240 Ky. 398, 42 S.W.2d 499, 501–02 (Ky. 1931)).

[22] *Id.* at 223 (citing *Willis v. Hamilton Mut. Ins. Co.*, 614 S.W.2d 251 (Ky. App. 1981) (quoting *Pachucki v. Republic Ins. Co.*, 89 Wis.2d 703, 278 N.W.2d 898, 901 (Wis. 1979)).

[23] *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 917 (Ky. 2013) (discussing foreseeability in negligence actions the Court found that one cannot have a duty, or be expected to foresee the unforeseeable) (citing *A.W. v. Lancaster County School District 0001*, 280 Neb. 205, 784 N.W.2d 907, 918 (Neb. 2010)) ("To say, as we have in the past, that a defendant had no duty, under particular circumstances, to foresee a particular harm is really no different from saying that the defendant's duty to take reasonable care was not breached, under those circumstances, by its failure to foresee the unforeseeable.").

9

"that his conduct involves a risk of [property damage] if a reasonable [person]

would do so while exercising such attention, perception of the circumstances,

memory, knowledge of other pertinent matters, intelligence, and judgment as a

reasonable [person] would have."[24]

> The comprehension of pertinent matters refers to an actor's ability to recognize the risk. To have the ability to make such a recognition "he is required to know (a) the qualities and habits of human beings and animals and the qualities, characteristics, and capacities of things and forces in so far as they are matters of common knowledge at the time and in the community; and (b) the common law, legislative enactments, and general customs in so far as they are likely to affect the conduct of the other or third persons."[25]

However, as the Court of Appeals in *Stone* stated, mental incapacity

prevents the actor from forming "mind enough to know the nature and quality

of his act" and "[a] person's actions will not be considered intentional if he is

unable to comprehend the physical nature of their consequences[.]"[26] Mental

incapacity renders a person unable to have knowledge of the matters pertinent

to assessing foreseeability of risk because it prevents the actor from being able

to understand the nature and quality of their actions. Since a mentally

incapacitated actor cannot ascertain the foreseeability of risks, it is impossible

---

[24] *Lee v. Farmer's Rural Elec. Co-op. Corp.*, 245 S.W.3d 209, 213 (Ky. App. 2007) ("In determining whether an injury was foreseeable, we look to whether a reasonable person in a defendant's position would recognize undue risk to another, not whether a reasonable person recognized the specific risk to the injured party.").

[25] *Id.* at 213.

[26] *Stone,* 34 S.W.3d 809 at 813 (Ky. App. 2000) (citing *Nationwide Mut. Fire Ins. Co. v. May*, 860 F.2d 219, 223–25 (6th Cir. 1988)) ("to determine whether an act was intentional hinged on whether the actor understood the physical nature of the consequences of his actions, regardless of whether he could discern right from wrong.").

10

to judge objectively what an insured acting under delusion could have reasonably expected to result from his actions.

As a result, we adopt the standard set forth in *Stone* and hold today that an intentional-act exclusion will be defeated if the insured shows at the time of the act, not just that he did not know right from wrong, but that he did not understand the nature and quality of his actions so that he was rendered unable to understand the physical nature of their consequences.[27] Only when the insured provides evidence of his lack of understanding will the intentional-acts exclusion provision be defeated, and the insurer be required to provide coverage.[28] This results in a high burden on the insured but adequate protection for the insured's reasonable expectation of insurance coverage for property damage.

As previously stated, summary judgment was erroneously granted here, but because we find that an insured's mental-incapacity defense applies to intentional-act exclusion provisions, summary judgment in favor of Auto Club may be inappropriate at this juncture. The record reflects evidence that would permit an inference that Logan was aware of the nature of his actions. For example, as the Court of Appeals notes, Logan told the official arson investigator that he obtained gasoline from the basement earlier in the evening,

---

[27] *Id.* at 813 (finding that an exclusion provision will not be defeated with mere "proof of a mental illness, such as an insane impulse, that merely precluded the actor from controlling his actions or knowing right from wrong . . .").

[28] *Id.* ("In this case, there was substantial medical evidence to support the conclusion that Michael was capable of forming an intent to act and that he knew the nature and quality of his acts.").

11

poured the gas around the couch and placed his books on it. A fact-finder could reasonably infer that Logan was able to understand the nature of his actions and had either the subjective intent to start a fire to end his life in a way that would cause damage to the home or that it was at least reasonably foreseeable that damage to the couch, if not destruction of the family home could happen. We affirm the Court of Appeals' decision reversing the trial court's grant of summary judgment in favor of the Foremans, but we remand this case to the trial court allow the insureds an opportunity to litigate a lack-of-capacity defense consistent with the standard set forth in this opinion.

### III. CONCLUSION

We affirm the Court of Appeals and remand this matter for further proceedings consistent with this opinion.

All sitting. Minton, C.J.; Conley, Hughes, Keller, Nickell, and VanMeter, JJ., concur. Lambert, J., concurs in result only. Keller, J., concurs by separate opinion, in which Conley and Nickell, JJ., join.

KELLER, J., CONCURRING: Brent and Kathleen Foreman argue to this Court that, as a matter of public policy, Auto Club Property-Casualty Insurance Company should be prohibited from denying them insurance coverage, as they are innocent co-insureds. As it appears this public policy argument was not made to the trial court, I concur with the majority's well-written opinion in all aspects. However, I write separately to address two points. First, I want to draw attention to this Court's previous opinion in *American Hardware Mutual Insurance Company v. Mitchell*, 870 S.W.2d 783

12

(Ky. 1993). Second, I write to emphasize the need for more protection for innocent co-insureds.

In *Mitchell,* we were tasked with determining whether the obligations of married co-insureds were joint and several. *Id.* at 784. In that case, the insurer denied coverage to the wife for losses attributed to the husband's act of arson. *Id.* We said that "the proper rule should be that an innocent spouse should not be denied coverage under any policy of insurance simply because of the marital relationship." *Id.* at 785. Although we acknowledged that "the policy could have been written to negate the collection of insurance by a co-insured," we went on to direct that "[a]n insurance policy which covers the interests of more than one insured should be considered several or separate as to each person insured." *Id.* Accordingly, we affirmed the Court of Appeals' reversal of the trial court's granting of summary judgment against the wife. *Id.* We further held that factual issues existed as to "whether the [wife] actually set the fire; had knowledge and authorized its setting; or later ratified the intentional act." *Id.*

Notably, a three-justice dissent would have reversed the Court of Appeals because the husband and wife were both listed as a "named insured" on the policy and the acts of one could reasonably be attributed to the other. *Id.* at 786 (Leibson, J., dissenting). However, the dissent noted that it would have agreed with the majority if the arson had merely been committed by "an insured." *Id.* (Leibson, J., dissenting). In the dissent's view, the broad, unqualified word "insured" where it includes "any relative in the same household or even nonrelatives who are children residing in the same

13

household" is too attenuated from the intentional loss exclusion to provide adequate notice "that coverage is excluded for a fire set intentionally by persons who fit within this broad definition of an insured, where she has no knowledge and no complicity in setting the fire." *Id.* (Leibson, J., dissenting). The dissent went on to say that "[t]o extend the exclusion so broadly would exclude coverage beyond the reasonable expectations of the policyholder." *Id.* (Leibson, J., dissenting).

Although the Foremans have not yet contested that if the exclusion applies to Logan, it also precludes them from receiving coverage, it is difficult to imagine that a parent reasonably expects to be excluded from homeowners' insurance coverage if his or her child, struggling with mental health issues, starts a fire in the house during an attempted suicide. In the case before us, Logan was admitted, by his parents, to The Brook Hospital less than a week prior to the events in this case because he was threatening suicide. He was discharged on September 13, 2013, just a few days later, because the Foremans' health insurance declined to continue to pay for treatment. The events giving rise to this case occurred only a day and a half later, in the early morning hours of September 15, 2013.

I am mindful that parties to a contract should receive the contract for which they bargained. Further, insurers can write policies "to negate the collection of insurance by a co-insured." *Id.* at 785. However, they can only do so to the extent permitted by statute. Our current statutory scheme protects innocent co-insureds "if the loss arose out of a pattern of domestic violence and

14

abuse and the perpetrator of the loss is criminally prosecuted for the act causing the loss." KRS 304.12-211(2)(b). Victims of domestic violence receive this extra protection, at least in part, because we, as a society, do not want to victimize them any further. If the abuser starts a fire in the home as an act of domestic violence and is prosecuted for that action, the victim can still receive payment under his or her insurance policy for the damage.

I see strong parallels between victims of domestic violence and parents of children who struggle with mental illness. Parents may find themselves raising children with mental illness or even developmental challenges which may render the child more likely to engage in destructive behaviors. Most parents will not abandon their child because he or she struggles with mental illness or other challenges even when those challenges may have unforeseen consequences. Encouraging parents to seek treatment, if necessary, for their children and supporting them in maintaining their family unit is sound public policy.

The facts of this case are noteworthy and compelling. Logan has struggled with mental health issues for years. His family has repeatedly and continually sought mental health treatment for him, including regular outpatient treatment with a therapist. On September 10, 2013, just five days before the fire, Logan made suicidal threats and was admitted as an inpatient to The Brook Hospital. On September 13, 2013, he was discharged from The Brook, not because he completed a specific treatment program, but because his health insurance refused to pay for inpatient treatment any longer. He was

referred to an intensive outpatient program but had not yet begun that program when, in the early morning hours of September 15, he set fire to a couch in his basement in a suicide attempt. Following the suicide attempt, he received outpatient treatment at The Brook. Logan was eventually criminally prosecuted for arson and entered into a diversion agreement whereby he was required to continue with his mental health treatment and enroll in and complete the National Guard Youth Challenge Program. These facts draw striking parallels to the factual scenarios in which KRS 304.12-211 provides relief to the innocent-victim spouse.

Changes in public policy should not be made by judicial fiat. They must be determined by our legislature. That process will allow all interested in this issue to have a voice. However, I maintain it is time to enact greater protections for innocent co-insureds so that insurance coverage better aligns with the reasonable expectations of the insured.

Conley and Nickell, JJ., join.

COUNSEL FOR APPELLANTS:

Cyrus Gilmore Dutton, III
Cole Tanner Tomlinson
Dutton and Associates, PLLC

COUNSEL FOR APPELLEE:

Donald J. Haas
Smith & Hoskins

COUNSEL FOR AMICUS CURIAE: THE INSURANCE INSTITUTE OF KENTUCKY:

Thomas Frederick Glassman
Bonezzi Switzer Polito & Hupp CO LPA